Charles C. Rainey, Esq.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation, | ) Case No.: 2:17-cv-893 |
| | ) |
| | ) **COMPLAINT** |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JOHN AND JANE DOES, | ) |
| | ) |
| Defendants | ) |

Plaintiff WWE STUDIOS FINANCE CORP. ("PLAINTIFF"), by and through its counsel, Charles Rainey, Esq. of Hamrick & Evans LLP, complains and alleges as follows against Defendants JOHN AND JANE DOES (collectively, "DEFENDANTS"):

<u>**NATURE OF THE ACTION**</u>

1.   This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.   The Plaintiff alleges that each Defendant is liable for:

    (a)  direct copyright infringement in violation of 17 U.S.C. §§106 and 501; and

    (b)  contributory copyright infringement.

/ / /

/ / /

HAMRICK & EVANS LLP

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.  As shown on Exhibit "**1**" attached to this Complaint, and incorporated herein by reference, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District.  Under Fed.R.Civ.P. 4, every federal district court follows the law on personal jurisdiction that is in force in the state courts where the federal court is located.  Under NRS 14.065, the courts may exercise personal jurisdiction to the extent permitted under federal due process.  Here, this Court has personal jurisdiction over each Defendant because:

    (a)  each Defendant committed the tortious conduct alleged in this Complaint in the State of Nevada, and/or

    (b)  has engaged in business transactions in the State of Nevada, such as, without limitation, the ongoing purchase and maintenance of Internet service within the State.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because:

    (a)  a substantial part of the events giving rise to the claims occurred in this District; and

    (b)  the Defendants reside, or at the very least maintain residences or ongoing business operations within the State, and therefore can be found in this State.

    Additionally, venue is proper in this District pursuant 28 U.S.C. §1400(a) (venue for copyright cases), because the majority of the Defendants or Defendants' agents reside or may be found in this District.

/ / /

HAMRICK & EVANS LLP

## PARTIES

6. The Plaintiff is a Delaware corporation, having offices in California, located at 12424 Wilshire Boulevard, Ste. 1400, Los Angeles, CA 90025.

7. Each Defendant is known to the Plaintiff only by an IP address.

8. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

9. The ISP to which a Defendant subscribes can correlate a Defendant's IP address to a Defendant's true identity.

## JOINDER

10. Pursuant to Fed.R.Civ.P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that:

   (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants;

   (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and

   (c) there are common questions of law and fact.

Indeed, the claims against each of the Defendants are identical, and each of the Defendants used the BitTorrent protocol, jointly and in concert, to infringe the Plaintiff's copyrighted Work.

## FACTUAL BACKGROUND

### I. *The Plaintiff Owns the Copyright to the Motion Picture*

11. The Plaintiff is the owner of United States Copyright Registration Number PAu 3-807-717 (the "Registration") for the motion picture entitled THE ELIMINATORS (the "Work"), a film that has been shown recently in numerous theaters throughout the United States and throughout the world.

HAMRICK & EVANS LLP

13. A copy of the Plaintiff's Copyright Registration Record, evidencing, among other things, the Plaintiff's ownership of the Registration and the Registration date, is attached to this Complaint as Exhibit "2" and incorporated herein by reference.

## II. *The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright*

14. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users of the BitTorrent protocol on the Internet account for over a quarter of all internet traffic. The creators and users of BitTorrent developed their own lexicon for use when talking about BitTorrent.

15. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### A. *Each Defendant Installed a BitTorrent Client onto his or her Computer.*

16. Each Defendant installed a BitTorrent Client onto his or her computer.

17. A BitTorrent "Client" is a software program that implements the BitTorrent Protocol. There are numerous such software programs including *µTorrent* and *Vuze*, both of which can be directly downloaded from the Internet. *See www.utorrent.com*, and *http://new.vuze-downloads.com/*.

/ / /

/ / /

HAMRICK & EVANS LLP

4

18. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

   **B.** *The Initial Seed, Torrent, Hash and Tracker*

19. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

20. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

21. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

22. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

23. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

24. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

25. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

HAMRICK & EVANS LLP

26. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

## C. *Torrent Sites*

27. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites, including *www.TorrentZap.com*, *www.Btscene.com*, and *www.ExtraTorrent.com*.

28. Upon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work.

## D. *Uploading and Downloading a Work through a BitTorrent Swarm*

29. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

30. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

31. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

32. In this way, all of the peers and seeders are working together in what is called a "swarm."

33. Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

HAMRICK & EVANS LLP

6

34. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

35. Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

### E. *The Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work.*

36. The Plaintiff retained the services of a digital forensic investigation service, MAVERICKEYE UG (the "Investigator"), to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

37. The Investigator used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing trans actions.

38. The Investigator extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of:

{FILE HASH}

(hereafter, referred to as the "Unique Hash Number").

HAMRICK & EVANS LLP

39. The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "**1**" accurately reflect what is contained in the evidence logs, and show:

    (A) Each Defendant had copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number; and

    (B) Therefore, each Defendant was part of the same series of transactions.

40. Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

41. The Investigator analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit "**1**" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

42. The Investigator viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

**MISCELLANEOUS**

43. All conditions precedent to bringing this action have occurred or been waived.

44. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

**FIRST CLAIM FOR RELIEF**

(Direct Copyright Infringement)

45. The Plaintiff incorporates the allegations in the foregoing paragraphs.

46. Plaintiff is the owner of the Registration for the Work, which contains an original work of authorship.

47. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered work that are original.

HAMRICK & EVANS LLP

48. The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display its Work.

49. As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to:

    (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

    (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

    (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

    (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

50. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

51. By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also numerous owners of local theaters in Nevada, their employees, and, ultimately, the local Nevada economy. The Defendants' misconduct therefore offends public policy.

52. The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants direct and secondary infringing activity, including, without limitation, lost sales, price erosion, and a diminution of the value of its copyright.

HAMRICK & EVANS LLP

## SECOND CLAIM FOR RELIEF

(Contributory Copyright Infringement)

53. The Plaintiff incorporates the allegations in the foregoing paragraphs.

54. The Plaintiff is the owner of the Registration for the Work, which contains an original work of authorship.

55. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

56. By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

57. The Plaintiff did not authorize, permit or consent to the Defendants' inducing, causing or materially contributing to the infringing conduct of each other Defendant.

58. Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with the Defendant.

59. Each Defendant knew or should have known that other BitTorrent users in a swarm with it, here the other Defendants, were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.

60. Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

61. Each of the Defendants' contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

62. By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also

HAMRICK & EVANS LLP

numerous owners of local theaters in Nevada, their employees, and, ultimately, the local Nevada economy. The Defendants' misconduct therefore offends public policy.

63. The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants direct and secondary infringing activity, including, without limitation, lost sales, price erosion, and a diminution of the value of its copyright.

## THIRD CLAIM FOR RELIEF

### (Vicarious Copyright Infringement)

64. The Plaintiff incorporates the allegations in the foregoing paragraphs.

65. The Plaintiff is the owner of the Registration for the Work that contains an original work of authorship.

66. Each of the Defendants are vicariously liable for the infringement upon the Plaintiff's copyright, as such infringement occurred over the Defendants' Internet access points, and each of the Defendants benefited from such infringement.

67. The Defendants each maintain Internet service at their respective addresses, purchasing such service from an Internet Service Provider.

67. As the accountholders for the Internet service provided to their respective addresses, each Defendant possesses the right and ability to supervise any infringing activity occurring over each Defendants' Internet access point.

68. Each of the Defendants failed to reasonably supervise the use of their respective Internet access points, thereby allowing those Internet access points to be utilized for the purposes of unlawfully downloading and sharing the Plaintiff's Work.

68. The Defendants, and each of them, derived one or more direct benefits from allowing the infringing activity to occur over their respective Internet access points, including, without limitation: the benefit of viewing the Plaintiff's Work

HAMRICK & EVANS LLP

without paying for it or otherwise compensating the Plaintiff; the benefit of allowing others within the Defendants' household to view the Work, thereby providing the household with free entertainment, at no cost to the Defendant.

69. The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants direct and secondary infringing activity, including lost sales, price erosion, and a diminution of the value of its copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court enter a judgment in its favor against the Defendants jointly and severally and enter an order:

(A)   enjoining permanently each Defendant and all other persons who are inactive concert or participation with each Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B)   mandating that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody, or control;

(C)   mandating that each Defendant delete and permanently remove the copy of the Work that each Defendant has on the computers under that Defendant's possession, custody or control;

(D)   finding that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E)   awarding the Plaintiff either its actual damages and any additional profits made by each Defendant pursuant to 17 U.S.C. § 504-(a)-(b) or statutory damages in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(F)   awarding the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G)   granting the Plaintiff any and all further relief that this Court deems just and proper.

HAMRICK & EVANS LLP

## <u>DEMAND FOR A JURY TRIAL</u>

The Plaintiff hereby demands a trial by jury on all issues related to or arising out of this matter.

Respectfully submitted this March 28, 2017.

/s/ Charles C. Rainey
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

1  CHARLES C. RAINEY, ESQ.
2  Nevada Bar No. 10723
   *crainey@hamricklaw.com*
3  HAMRICK & EVANS LLP
   7670 W. Lake Mead Blvd., Ste. 140
4  Las Vegas, Nevada 89128
   +1.702.425.5100 (ph)
5  +1.818.763.2308 (fax)
   *Attorney for Plaintiff*

6

7

8                    UNITED STATES DISTRICT COURT

9                          DISTRICT OF NEVADA

10  WWE STUDIOS FINANCE CORP., a        )
    Delaware corporation,               ) Case No.: 2:17-cv-893
11                                      )
              Plaintiff,                ) CERTIFICATE OF INTERESTED PARTIES
12  vs.                                 )
                                        )
13  JOHN AND JANE DOES,                 )
                                        )
14            Defendants                )
                                        )
15  _____ )

16        The undersigned, counsel of record for WWE STUDIOS FINANCE CORP.,

17  certifies that the Plaintiff is a wholly owned subsidiary of WWE STUDIOS FINANCE

18  HOLDING CORP., which is, in turn, a wholly owned subsidiary of WWE STUDIOS,

19  INC., which is, in turn, a wholly owned subsidiary of the publicly traded company

20  WORLD WRESTLING ENTERTAINMENT, INC. (NYSE: WWE).

21        Respectfully submitted, this March 28, 2017.

22                              /s/ Charles Rainey
                                CHARLES C. RAINEY, ESQ.
23                              Nevada Bar No. 10723
                                *crainey@hamricklaw.com*
24                              HAMRICK & EVANS LLP
                                7670 W. Lake Mead Blvd., Ste. 140
25                              Las Vegas, Nevada 89128
                                +1.702.425.5100 (ph)
26                              *Attorney for Plaintiff*

27

28

HAMRICK & EVANS LLP

1

CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation, | ) Case No.: 2:17-cv-893 |
| Plaintiff, | ) **PLAINTIFF'S EX PARTE MOTION FOR** |
| vs. | ) **LEAVE TO TAKE LIMITED** |
| | ) **DISCOVERY PRIOR TO RULE 26(f)** |
| JOHN AND JANE DOES, | ) **CONFERENCE (AUTHORITY** |
| | ) **INCORPORATED)** |
| Defendants | ) |

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff WWE STUDIOS FINANCE CORP., hereby moves for leave to serve third party subpoenas prior to a Rule 26(f) conference (the "Motion").

**Statement per LR 7-5, Showing Good Cause why the Matter Is Submitted to the Court without Notice to all Parties:**

Under LR 7-5, "[a]ll ex parte motions, applications or requests shall contain a statement showing good cause why the matter was submitted to the Court without notice to all parties." Here, this motion requests leave to conduct discovery to determine the true identities of the opposing parties. The Plaintiff's only means of seeking relief from the damages complained of in the present case is to utilize the process of discovery to determine the true identities of the defendants. Moreover, **THE EVIDENCE IS TIME SENSITIVE**, given that the Internet Service Providers only maintain the relevant data for a limited time.  As such, good cause

HAMRICK & EVANS LLP

1

exists for submitting this matter to the Court on an emergency basis without notice to all parties.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Plaintiff seeks leave to serve limited, immediate discovery on the Internet Service Provider(s) ("ISPs") of Doe Defendants' so that the Plaintiff may learn Defendants' true identities. The Plaintiff is suing each of the Defendants for using the Internet and the BitTorrent protocol to commit direct and contributory copyright infringement.

Because the Defendants used the Internet to commit their infringement, the Plaintiff only knows the Defendants by their Internet Protocol ("IP") addresses. The Defendants' IP addresses were assigned to the Defendants by their respective Internet Service Providers ("ISPs"). Accordingly, the ISPs can use the IP addresses to identify the Defendants. Indeed, ISPs maintain internal logs that record the date, time and customer identity for each IP address assignment made by that ISP. Significantly, the ISPs may maintain these logs for only a short period of time.

The Plaintiff seeks leave of Court to serve Rule 45 subpoenas on the ISPs and any related intermediary ISPs. Any such subpoena will demand the true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address. The Plaintiff will use this information only to prosecute the claims made in its Complaint. Without this information, the Plaintiff cannot serve the Defendants nor pursue this lawsuit to protect its valuable copyright.

///

///

///

///

HAMRICK & EVANS LLP

# II.

## ARGUMENT

Pursuant to Rule 26(d)(1), a party is generally prohibited from propounding discovery in advance of a Rule 26(f) conference without first obtaining an order from the Court granting leave to conduct advance discovery. Nevertheless, "courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."[1] "The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities 'unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'"[2]

To determine whether to grant a request for early discovery, the court applies the conventional "good cause" standard that weighs the need for discovery to further justice against the prejudice to the opposing party.[3] Courts in this district apply a three-factor test when considering motions like the present one.[4] First, "the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court."[5] Second, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a

HAMRICK & EVANS LLP

---

[1] *QOTD Film Inv. Ltd. v. Does 1-30*, 2:16-cv-00928, Order Granting Leave to Conduct Limited Discovery, pp. 2-3 (D. Nev. 2016) (*quoting Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D.Cal.1999) (*citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980))).

[2] *QOTD Film Inv. Ltd.*, p. 3 (*quoting 808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, 2012 U.S. Dist. LEXIS 62980, *7 (S.D.Cal. May 4, 2012) (*quoting Gillespie*, 629 F.2d at 642)). "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins.*, 185 F.R.D. at 578 (*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977))); *see also* Crim Prods., Inc. v. Doe, 2:16-cv-01968, p. 2 (D., Nev 2016) (*citing Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (*citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980))).

[3] *QOTD Film Inv. Ltd.*, p. 3 (*quoting Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D.Cal.2002)).

[4] *Id* at 3.

[5] *Id* at 3.

good faith effort to identify and serve process on the defendant.[6] Third, the "plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss."[7]

In Internet infringement cases nearly identical to the present case, this Court has consistently held that good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity prior to a Rule 26(f) conference.[8]  Moreover, the holdings of this Court comport with the general consensus of Court's throughout this country.[9] Indeed, the Circuit Courts that have taken up this issue have unanimously approved the procedure of suing Doe defendants and then using discovery to identify such defendants.[10]

Because the Plaintiff easily satisfies all of the foregoing requirements, and because this Court has repeatedly granted motions like the present one in cases

HAMRICK & EVANS LLP

---

[6] *Id* at 3.

[7] *Id.* (*citing Gillespie*, 629 F.2d at 642).

[8] *See e.g.*, *PTG Nevada v. Does 1-9*, 2:16-cv-00231 (D. Nev, 2016); *LHF Prods. v. Does 1-11*, 2:16-cv-00924 (D. Nev, 2016); LHF Prods. v. *Does 1-14*, 2:16-cv-00925 (D. Nev., 2016); *LHF Prods. v. Does 1-30*, 2:16-cv-00925 (D. Nev., 2016); *QOTD Film Inv. Ltd. v. Does 1-30*, 2:16-cv-00928 (D. Nev., 2016); *LHF Prod. v. Does 1-21*, 2:16-cv-01803 (D. Nev., 2016); *LHF Prod. v. Does 1-18*, 2:16-cv-01804 (D. Nev., 2016); *Cell Film Holdings v. Does 1-19*, 2:16-cv-01853 (D. Nev., 2016); *Crim Prods v. Does 1-22*, 2:16-cv-01968 (D. Nev., 2016); *Cell Film Holdings v. Does 1-20*, 2:16-cv-02089 (D. Nev., 2016); *ME2 Prods v. Does 1-25*, 2:16-cv-2657 (D. Nev., 2016).

[9] *UMG Recording, Inc. v. Doe*, 2008 WL 4104214, *4 (N.D. Cal. 2008) (numbers added); *see also Arista Records, LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008), and the cases cited therein, noting the "overwhelming" number of cases where copyright infringement plaintiffs sought to identify "Doe" defendants and courts "routinely applied" the good cause standard to permit discovery. *See Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (Court may order expedited discovery for good cause.); *see also Sony Music Entertainment v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); see also *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011) (citation omitted).

[10] *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011); *See David v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("Courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some opportunity for discovery to learn the identities."); *see also Nu Image, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 72420 (M. Dist. Fla. 2012); *accord Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009); *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000); *Green v. Doe*, 260 Fed.Appx. 717, 719 (5th Cir. 2007); *Brown v. Owens Corning Inv. Review Committee*, 622 F.3d 564, 572 (6th Cir. 2010); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Young v. Transportation Deputy Sheriff I*, 340 Fed Appx. 368 (9th Cir. 2009); *Krueger v. Doe*, 162 F.3d 1173, (10th Cir. 1998); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir.).

1   nearly identical to the case at bar, this Court should grant the present motion for

2   leave.

3      A. <u>Good Cause Exists to Grant the Present Motion</u>

4      Here, all three of the factors establishing "good cause" for allowing expedited

5   discovery prior to the 26(f) conference are met.

6      1. <u>Plaintiff has Identified Doe Defendants with Sufficient Specificity.</u>

7      Exhibit "1" of the Plaintiff's Complaint on file herein sets out the specific

8   date and time of each incident of copyright infringement, the infringer's IP

9   Address, the infringer's Internet Service Provider ("ISP"), and the County and

10  State in which the infringement occurred.   As noted in the Complaint, the Plaintiff

11  tracked all of the incidents of copyright infringement to IP Addresses operating

12  within this forum state.   Furthermore, as explained in the Declaration of Daniel

13  Arheidt, attached hereto as Exhibit "1" and incorporated herein by reference, the

14  information provided in the Complaint is sufficient to track each copyright

15  infringement to a single Internet subscriber.   As explained by Mr. Arheidt:

16         In logs kept in the ordinary course of business, ISPs keep track
           of the IP addresses assigned to their subscribers.  Once provided
17         with an IP address, plus the date and time of the detected and
           documented infringing activity, ISPs can use their subscriber
18         logs to identify the name, address, email address, phone number
           and other related information of the user/subscriber. [11]
19

20      The Plaintiff seeks to discover from the Defendants' ISPs the true name,

21  address, telephone number, e-mail address and, wherever possible, Media Access

22  Control ("MAC") address of each of the Defendants.   This is all specific information

23  that is in the possession of the Defendants' ISPs.

24      Obviously, without learning the Defendants' true identities, the Plaintiff is

25  hopelessly unable to serve the Defendants with process and proceed with this case.

26  The Plaintiff's important statutorily protected property rights are at issue in this

27

28  [11]  See Declaration of Daniel Arheidt in Support of Plaintiff's Motion for Leave to Take Limited Expedited
      Discovery Prior to a Rule 26(f) Conference ("Arheidt Declaration") attached as Exhibit "1" and incorporated
      herein by reference, at p. 4, ¶ 22.

HAMRICK & EVANS LLP

lawsuit and, therefore, the equities should weigh heavily in favor of preserving the Plaintiff's rights. The Plaintiff has a strong legitimate interest in protecting its copyrights. Meanwhile, the Defendants are all copyright infringers who have no legitimate expectation of privacy in the subscriber information they provided to the ISPs, much less in distributing the copyrighted works in question without permission.[12] Meanwhile, the information sought by the Plaintiff is specifically limited to that information necessary for the Plaintiff to move forward with its case.[13] Because the Plaintiff has identified the Doe Defendants with reasonable specificity, has narrowly tailored the scope of its intended to discovery, and the balance of the hardships falls squarely in favor of the Plaintiff, the Plaintiff has more than satisfied the first prong of the applicable "good cause" standard.

> ### 2. Plaintiff has Made a Good Faith Effort to Identify the Doe Defendants and Demonstrated that there is No Feasible Means of Identification Other than Allowing Plaintiff to Take Early Discovery.

There is no way to obtain the Defendants' true identities other than by getting the information from the Defendants' ISPs. As noted by Mr. Arheidt in the attached declaration, "[o]nly the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber."[14] In the attached declaration, Mr. Arheidt recounts in detail the lengths Plaintiff's expert has gone in identifying the Defendants' IP addresses. Ex 1. at pp. 2-4.[15] However, Mr. Arheidt makes it clear that neither the Plaintiff nor its expert can

---

[12] *See Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); and *Sony Music Entertainment, Inc. v. Does 1–40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission.").

[13] *See Sony*, 326 F. Supp., at 566.

[14] *Arheidt Declaration*, p. 4 ¶ 23.

[15] *Id* at pp. 2-4.

HAMRICK & EVANS LLP

reasonably obtain any further identifying information about the Defendants without the assistance of their ISP.[16]   Meanwhile, the ISP will only provide that assistance to the Plaintiff if required to do so under a duly authorized subpoena.

Logically, it is not possible for Plaintiffs to have a Rule 26(f) conference with the Defendants until the Plaintiff learns the Defendants' identities. Further, unless action is taken quickly, the ISPs' records may be deleted or destroyed,[17] and the Plaintiff's right to sue the Defendants for infringement may be forever lost. Because there is no other way for the Plaintiff to obtain the Defendants' identities except by serving a subpoena on Defendants' ISPs, coupled with the high risk that this information will be lost or destroyed in the absence of any court order allowing early discovery, the Plaintiff has amply satisfied the second factor in the foregoing "good cause" standard.[18]

### 3.  Plaintiff Has Properly Established A *Prima Facie* Case for Copyright Infringement Against Each of the Defendants

The Plaintiff has satisfied the third good cause factor by properly pleading a cause of action for copyright infringement that is likely to survive any attempted motion to dismiss.   The Complaint alleges, in part, as follows:

47.   By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered work that are original.

48.   The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display its Work.

49.   As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to:
(A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;
(B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;
(C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

---

[16] *Id* at ¶¶23-24.

[17] *Id* at ¶ 21.

[18] *See e.g., Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *see also See* UMG, 2008 WL 4104214, *5.

HAMRICK & EVANS LLP

(D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

50. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

51. By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also numerous owners of local theaters, their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

52. The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants, including lost sales, price erosion, and a diminution of the value of its copyright.[19]

Further, the Plaintiff's allegations of infringement are attested to by the Plaintiff's investigator, Daniel Arheidt.[20]   Meanwhile, Courts throughout this Country have consistently held that, where a copyright infringement is traced to a specific IP Address, as is the case here, the likelihood that the subscriber is the direct infringer provides a sufficient *prima facie* case to overcome a particular defendant's motion to dismiss.[21]

---

[19] Complaint at ¶¶ 47-52. *See* 17 U.S.C. §106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright.").

[20] *See Declaration of Daniel Arheidt in Support of Plaintiff's Motion for Leave to Take Limited Expedited Discovery Prior to a Rule 26(f) Conference* ("Arheidt Declaration") attached as Exhibit "**1**" and incorporated herein by reference.

[21] *See e.g., Malibu Media, LLC v. Does 1*, No. 12 Civ. 2078, 2013 WL 30648, at *4 (E.D.Pa. January 3, 2013); *John Wiley & Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 189 (S.D.N.Y.2012); *Malibu Media, LLC v. Pelizzo*, No. 12 Civ. 22768, 2012 WL 6680387, at *3 (S.D.Fla.2012) (finding a similar complaint sufficient where a plaintiff "simply alleged that a computer using the IP address assigned to Defendant participated in the alleged infringing activity" despite the fact that the Defendant argue[d] that the allegations [were] too speculative and conclusory to adequately allege a plausible copyright infringement claim against an individual person, specifically Defendant ... because they d[id] not explain how his condominium unit was associated with the IP address at issue"); *Braun v. Primary Distributor Doe No. 1*, Nos. C 12–5786 MEJ, 12–5814 MEJ, 12–5812 MEJ, 12–5813 MEJ, 2012 WL 6087179, at *3 (N.D.Cal. Dec. 6, 2012) (concluding that the plaintiff had adequately asserted a federal copyright infringement claim because the plaintiff alleged that "Defendants actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent filesharing protocol, including intentionally downloading a torrent file particular to Star Wars XXX. A Porn Parody, loading that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to Star Wars XXX. A Porn Parody, and ultimately, downloading and uploading pieces of a Star Wars XXX. A Porn Parody file to eventually obtain a whole copy of the file."); *Sunlust Pictures, LLC v. Does 1–75*, No. 12 Civ. 1546, 2012 WL 3717768, at *4 (N.D.Ill.2012) ("It is plausible, based on these allegations, that Doe shared copyrighted data with others in the swarm including some or all of the other defendants."); *see also Malibu Media v. Sanchez*, No. 13 Civ. 12168, pp. 4, 6 (E.D. Mich., Jan 15,

HAMRICK & EVANS LLP

8

Therefore, the Plaintiff has satisfied its obligation to plead a *prima facie* case.

## III.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff requests that this Court grant leave to the Plaintiff to issue Rule 45 subpoenas to the Defendants' ISPs.  A proposed order is tendered with this motion, attached hereto as Exhibit "**2**" and incorporated herein by reference.

Respectfully submitted, this March 28, 2017.

/s/ Charles Rainey
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

2014) (Court denies Defendant Sanchez' motion to dismiss, noting "As the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer."); *Malibu Media v. Michael Harris*, No. 12 Civ. 1117-WTL-MJD (S.D. Ind., July 18, 2013); *Cobbler Nevada v. Hellman*, No. 15 Civ. 00909 (D. Or., Dec. 14, 2015) (Court rejects Defendant's argument that he should be dismissed as merely the subscriber of the Internet service where some infringement occurred, noting that, while it is possible that some other party used the defendant's IP Address to commit the infringing acts, it is equally plausible that the Defendant committed those acts himself). *Malibu Media v. John Doe*, No. 15 Civ. 3185 (D. Md., Sep. 12, 2016) (Court finds that Defendant's mere status as an internet service subscriber is sufficient to overcome a motion to dismiss); *Tcyk, LLC v. Doe*, No. 13 Civ. 3127 (C.D. Ill, Sep. 29, 2014).

EXHIBIT "1"
TO PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO TAKE
LIMITED DISCOVERY PRIOR TO RULE 26(F) CONFERENCE

# THE DECLARATION OF DANIEL ARHEIDT

CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation, | ) Case No.: 2:17-cv-893 |
| Plaintiff, | ) |
| vs. | ) **DECLARATION OF DANIEL ARHEIDT** |
| | ) **IN SUPPORT OF PLAINTIFF'S** |
| | ) **MOTION FOR LEAVE TO TAKE** |
| JOHN AND JANE DOES, | ) **DISCOVERY PRIOR TO RULE 26(f)** |
| | ) **CONFERENCE** |
| Defendants | ) |

1. My name is Daniel Arheidt.  I am over the age of 18 and am otherwise competent to make this declaration.  This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.  Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

2. I am a consultant retained by the forensic investigation service, MAVERICKEYE UG, a German company, organized and existing under the laws of Federal Republic of Germany (the "Investigator").

3. The Investigator is in the business of providing forensic investigation services to copyright owners, such as the Plaintiff.

4. Plaintiff retained the services of the Investigator, and, in turn, retained my services in investigating and preparing the present lawsuit.

5. The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  It allows users to exchange ideas and information freely and

HAMRICK & EVANS LLP

1

easily, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.

6.   The Internet also affords opportunities for the wide-scale infringement of copyrighted motion pictures and other digital content.

7.   Once a motion picture has been transformed into a digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

8.   To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called peer-to peer ("P2P") or BitTorrent networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

9.   To use a P2P or BitTorrent distribution system requires more than a click of a button. A software installation and configuration process needs to take place.

10. The P2P systems enable widespread distribution of digital files.  Each user of the system who copies a digital file from another user can then distribute the file to other users and so on, such that complete digital copies can be easily and quickly distributed, thereby eliminating long download times.

11. Additionally, the P2P methodologies for which the Investigator monitored for Plaintiff's Motion Picture make even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  The initial file-provider intentionally elects to share a file using a P2P network.  This is called "seeding."  Other users ("peers") on the network connect to the seeder to download.  As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from where the file can be downloaded.  However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together to comprise the whole.

HAMRICK & EVANS LLP

12. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network can also be a source of download for that infringing file, potentially both copying and distributing the infringing Motion Picture.  The distributed nature of P2P leads to rapid spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent.

13. The Investigator monitors P2P Systems for acts of distribution of Plaintiff's motion picture through the use of MaverikMonitor™ software.

14. When MaverikMonitor finds an IP address distributing Plaintiff's motion picture, a direct connection is made to that computer and a portion of the infringing file is downloaded. MaverikMonitor also records the exact time of the connection and other available information broadcast by the infringing computer.

15. This evidence is then saved on a secure server in indexed evidence logs.

16. To confirm the infringing activity, the data downloaded from each defendant is matched to the complete file and a full copy of the motion picture being distributed is compared with a DVD of the original motion picture confirming the infringing IP address is in fact distributing Plaintiff's motion picture.

17. The software uses a geolocation functionality to determine the location of each infringing IP address under investigation. The geolocation data for the infringing IP address is also set forth in Exhibit 1 of the Plaintiff's Complaint ("Complaint Exhibit 1"), incorporated herein by reference.

18. The software reviews and other publicly available and searchable data to identify the ISP responsible for each infringing IP address and such data is also set forth in Complaint Exhibit 1.

19. The forensic software routinely collects, identifies and records the Internet Protocol ("IP") addresses in use by those people who employ the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works.  In this way the software is connected to files of illegal versions of the Motion Picture.

HAMRICK & EVANS LLP

3

20. Although the Investigator and Plaintiff have successfully captured data showing the infringement occurring on the Internet, Plaintiff is only able to obtain the IP addresses of the individuals who are committing the infringement and does not yet know the actual identities of the individual defendants.

21. An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP").  It only enables Plaintiff to trace the infringer's access to the Internet to a particular ISP. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.  Each time a subscriber logs on, he or she may be assigned a different (or "dynamic") IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses by the Internet Assigned Numbers Authority ("IANA") or a regional internet registry such as the American Registry for Internet Numbers ("ARIN").  However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs.  These intermediaries can be identified by the ISP and the intermediaries own logs will contain the subscriber information.

22. In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers.  Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber.

23. Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber.  From time to time, a subscriber of internet services may be assigned different IP addresses from their ISP.  Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used.  However, once provided with the IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to

HAMRICK & EVANS LLP

4

1    identify the name, address, email address, phone number and Media Access Control

2    number of the subscriber.

3        24. Unfortunately, many ISPs only retain this information needed to correlate an IP address

4    to a particular subscriber for a limited amount of time.

5        25. In this case, the Investigator determined that the Doe Defendants identified in Complaint

6    Exhibit 1 were using the ISPs listed in the exhibit to gain access to the Internet and distribute

7    and make available for distribution and copying Plaintiff's copyrighted motion picture.

8        26. It is possible for digital files to be mislabeled or corrupted; therefore, the Investigator (as

9    agent for Plaintiff) does not rely solely on the labels and metadata attached to the files

10   themselves to determine which motion picture is copied in the downloaded file, but also to

11   confirm through a visual comparison between the downloaded file and the Motion Picture

12   themselves.

13       27. As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, a member of

14   the Investigator watches a DVD of the original Motion Picture.

15       28. After the Investigator identified the Doe Defendants and downloaded the motion

16   pictures they were distributing, the Investigator opened the downloaded files, watched them and

17   confirmed that they contained the Motion Picture identified in the Complaint.

18       29. To identify the IP addresses of those BitTorrent users who were copying and distributing

19   Plaintiff's copyrighted Motion, the Investigator's forensic software scans peer-to-peer networks

20   for the presence of infringing transactions.

21       30. After reviewing the evidence logs, I isolated the transactions and the IP addresses of the

22   users responsible for copying and distributing the Motion Picture.

23       31. Through each of the transactions, the computers using the IP addresses identified in

24   Complaint Exhibit 1, transmitted a copy or a part of a copy of a digital media file of the

25   copyrighted Motion Picture identified by the hash value set forth in Complaint Exhibit 1.  The

26   IP addresses, hash values, dates and times contained in Complaint Exhibit 1 correctly reflect

27   what is contained in the evidence logs.  The subscribers using the IP addresses set forth in

28

HAMRICK & EVANS LLP

Complaint Exhibit 1 were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted Motion Picture.

32. Moreover, the users were sharing the exact same copy of the Motion Picture.  Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum."  The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1". By using a hash tag to identify different copies of the Motion Picture, the Investigator was able to confirm that these users reproduced the very same copy of the Motion Picture.

33. The Investigator's software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit 1 and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital motion picture.

34. The software uses a geolocation functionality to determine the location of the IP addresses under investigations. The location of each IP address is set forth in Complaint Exhibit 1 of the Complaint.  IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries.   These registries assign blocks of IP addresses to ISPs by geographic region.  Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format.  An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs.

35. I have reviewed the MaverikMonitor evidence logs, and can confirm the records of infringing activity in Complaint Exhibit 1, including IP address, time, and hash value, accurately reflect instances of actual observed distribution of Plaintiff's motion picture.

36. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 2017.


_____

Daniel Arheidt

HAMRICK & EVANS LLP

6

EXHIBIT "2"
TO PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO TAKE
LIMITED DISCOVERY PRIOR TO RULE 26(F) CONFERENCE

## PROPOSED ORDER

CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

WWE STUDIOS FINANCE CORP., a           )
Delaware corporation,                  ) Case No.: 2:17-cv-893
                                       )
                    Plaintiff,         ) **ORDER GRANTING PLAINTIFF'S EX**
vs.                                    ) **PARTE MOTION FOR LEAVE TO TAKE**
                                       ) **LIMITED DISCOVERY PRIOR TO RULE**
JOHN AND JANE DOES,                    ) **26(f) CONFERENCE**
                                       )
                    Defendants         )
                                       )
                                       )
                                       )

Pending before the Court is Plaintiff's motion for leave to conduct limited discovery prior to the conference required under Rule 26(f) of the Federal Rules of Civil Procedure ("FRCP"). Docket No. 3. For the reasons that follow, Plaintiff's motion is GRANTED.

Plaintiff alleges that Defendants used BitTorrent, an Internet peer-to-peer file sharing network, to illegally reproduce and distribute Plaintiff's copyrighted work in violation of the Copyright Act, 17 U.S.C. § 101 et seq. See Docket No. 1 at 3-11. To date, Plaintiff can only identify Defendants by the Internet Protocol ("IP") addresses they used to allegedly infringe on Plaintiff's copyright. Docket No. 3 at 2. Plaintiff represents that Internet Service Providers ("ISPs") maintain logs that record the date, time, and customer identity for each IP address assignment they make. *Id.* Plaintiff seeks leave "to serve limited, immediate discovery" on the ISPs that own the IP addresses at issue in this case in order to ascertain Defendants' true identities. *Id.* In particular, Plaintiff requests leave

to serve FRCP 45 subpoenas upon Defendants' ISPs and any related intermediary ISPs that own the relevant IP addresses, prior to the FRCP 26(f) conference. *See id.*

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed.R.Civ.P. 26(d)(1). Courts have adopted a good cause standard to evaluate requests for expedited discovery. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In *Semitool*, the Court found that "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Id.* "[G]ood cause is frequently found in cases involving claims of infringement[.]" *Id.*; *see also Liberty Media Holdings, LLC v. Letyagin*, 2012 WL 3135671, *3 (D. Nev. Aug. 1, 2012)

The Ninth Circuit has held that where the identity of the defendants is unknown prior to the filing of a complaint, the plaintiff should be given opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980)). Moreover, this Court has issued orders nearly identical to the present one in multiple cases torrent piracy cases with facts and issues nearly identical to those presented in the present case. *See e.g.*, Case No. 2:16-cv-01853-JAD-VCF; Case No. 2:16-cv-01968-RFB-CWH; Case No. 2:16-cv-02028-APG-CWH; Case No. 2:16-cv-02142-RFB-VCF; and Case No. 2:16-cv-02201-APG-VCF.

For good cause shown, the Court GRANTS Plaintiff's motion. Docket No. 3. Plaintiff may serve Rule 45 subpoenas upon the ISPs and any related intermediary ISPs that own the IP addresses at issue in the instant case, prior to the Rule 26(f) conference. The subpoenas will demand solely the true name, address, telephone number, e-mail address, and Media Access Control address for the account holder to whom the relevant IP addresses were assigned at the date(s) and time(s) that the alleged infringement activity

occurred. Plaintiff will use the information it obtains from the ISPs in response to these subpoenas solely to prosecute the claims it has made in the instant case.

IT IS SO ORDERED

DATED:

_____
UNITED STATES MAGISTRATE JUDGE

*Respectfully submitted by.*

/s/ Charles Rainey
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN AND JANE DOES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 2:17-cv-893

## SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION

TO: COX COMMUNICATIONS

 **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of such material:

 The names, addresses, phone numbers, email addresses, and other related contact information associated with the IP addresses set forth in Exhibit "**1**" attached hereto and incorporated herein by reference.

| Place: | Date and Time: |
|---|---|
| HAMRICK & EVANS LLP<br>2600 W. Olive Ave., Ste. 1020<br>Burbank, California 91505 | 9:00 a.m., April 19, 2017 |

 The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

          _____

          CHARLES C. RAINEY, ESQ.
          NV Bar No. 10723
          HAMRICK & EVANS LLP
          2600 W. Olive Ave., Ste. 1020
          Burbank, California 91505
          +1.818.763.5292 (ph) / +1.818.763.2308 (fax)
          *Attorneys for Plaintiff*

**Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)**

**(c) Protecting a Person Subject to a Subpoena.**
**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information;
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.
**(d)** **Duties in Responding to a Subpoena.**
**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial- preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(iii)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation,        )<br><br>        Plaintiff,   )<br>vs.   )<br><br>JOHN AND JANE DOES,   )<br><br>        Defendants.   ) | Case No.: 2:17-cv-893 |

## SUBPOENA TO PRODUCE DOCUMENTS AND INFORMATION

TO:   CENTURYLINK

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of such material:

The names, addresses, phone numbers, email addresses, and other related contact information associated with the IP addresses set forth in Exhibit "1" attached hereto and incorporated herein by reference.

| Place: | Date and Time: |
|---|---|
| HAMRICK & EVANS LLP<br>2600 W. Olive Ave., Ste. 1020<br>Burbank, California 91505 | 9:00 a.m., April 19, 2017 |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

_____
CHARLES C. RAINEY, ESQ.
NV Bar No. 10723
HAMRICK & EVANS LLP
2600 W. Olive Ave., Ste. 1020
Burbank, California 91505
+1.818.763.5292 (ph) / +1.818.763.2308 (fax)
*Attorneys for Plaintiff*

**Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)**

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d)** **Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial- preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(iii)