CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation,<br><br>    Plaintiff,<br>vs.<br><br>JOHN AND JANE DOES,<br><br>    Defendants | Case No.: 2:17-cv-893<br><br>**PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(f) CONFERENCE (AUTHORITY INCORPORATED)** |

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff WWE STUDIOS FINANCE CORP., hereby moves for leave to serve third party subpoenas prior to a Rule 26(f) conference (the "Motion").

**Statement per LR 7-5, Showing Good Cause why the Matter Is Submitted to the Court without Notice to all Parties:**

Under LR 7-5, "[a]ll ex parte motions, applications or requests shall contain a statement showing good cause why the matter was submitted to the Court without notice to all parties."  Here, this motion requests leave to conduct discovery to determine the true identities of the opposing parties. The Plaintiff's only means of seeking relief from the damages complained of in the present case is to utilize the process of discovery to determine the true identities of the defendants. Moreover, **THE EVIDENCE IS TIME SENSITIVE**, given that the Internet Service Providers only maintain the relevant data for a limited time.  As such, good cause

HAMRICK & EVANS LLP

1

exists for submitting this matter to the Court on an emergency basis without notice to all parties.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Plaintiff seeks leave to serve limited, immediate discovery on the Internet Service Provider(s) ("ISPs") of Doe Defendants' so that the Plaintiff may learn Defendants' true identities. The Plaintiff is suing each of the Defendants for using the Internet and the BitTorrent protocol to commit direct and contributory copyright infringement.

Because the Defendants used the Internet to commit their infringement, the Plaintiff only knows the Defendants by their Internet Protocol ("IP") addresses. The Defendants' IP addresses were assigned to the Defendants by their respective Internet Service Providers ("ISPs"). Accordingly, the ISPs can use the IP addresses to identify the Defendants. Indeed, ISPs maintain internal logs that record the date, time and customer identity for each IP address assignment made by that ISP. Significantly, the ISPs may maintain these logs for only a short period of time.

The Plaintiff seeks leave of Court to serve Rule 45 subpoenas on the ISPs and any related intermediary ISPs. Any such subpoena will demand the true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address. The Plaintiff will use this information only to prosecute the claims made in its Complaint. Without this information, the Plaintiff cannot serve the Defendants nor pursue this lawsuit to protect its valuable copyright.

///

///

///

///

II.

ARGUMENT

Pursuant to Rule 26(d)(1), a party is generally prohibited from propounding discovery in advance of a Rule 26(f) conference without first obtaining an order from the Court granting leave to conduct advance discovery. Nevertheless, "courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."[1] "The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities 'unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'"[2]

To determine whether to grant a request for early discovery, the court applies the conventional "good cause" standard that weighs the need for discovery to further justice against the prejudice to the opposing party.[3] Courts in this district apply a three-factor test when considering motions like the present one.[4] First, "the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court."[5] Second, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a

---

[1] *QOTD Film Inv. Ltd. v. Does 1-30*, 2:16-cv-00928, Order Granting Leave to Conduct Limited Discovery, pp. 2-3 (D. Nev. 2016) (*quoting Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D.Cal.1999) (*citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980))).

[2] *QOTD Film Inv. Ltd.*, p. 3 (*quoting 808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, 2012 U.S. Dist. LEXIS 62980, *7 (S.D.Cal. May 4, 2012) (*quoting Gillespie,* 629 F.2d at 642)). "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins.*, 185 F.R.D. at 578 (*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977))); *see also* Crim Prods., Inc. v. Doe, 2:16-cv-01968, p. 2 (D., Nev 2016) (*citing Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (*citing Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980))).

[3] *QOTD Film Inv. Ltd.*, p. 3 (*quoting Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D.Cal.2002)).

[4] *Id* at 3.

[5] *Id* at 3.

HAMRICK & EVANS LLP

good faith effort to identify and serve process on the defendant.[6] Third, the "plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss."[7]

In Internet infringement cases nearly identical to the present case, this Court has consistently held that good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity prior to a Rule 26(f) conference.[8] Moreover, the holdings of this Court comport with the general consensus of Court's throughout this country.[9] Indeed, the Circuit Courts that have taken up this issue have unanimously approved the procedure of suing Doe defendants and then using discovery to identify such defendants.[10]

Because the Plaintiff easily satisfies all of the foregoing requirements, and because this Court has repeatedly granted motions like the present one in cases

---

[6] *Id* at 3.

[7] *Id.* (*citing Gillespie*, 629 F.2d at 642).

[8] *See e.g., PTG Nevada v. Does 1-9*, 2:16-cv-00231 (D. Nev, 2016); *LHF Prods. v. Does 1-11*, 2:16-cv-00924 (D., Nev, 2016; LHF Prods. v. *Does 1-14*, 2:16-cv-00925 (D. Nev., 2016); *LHF Prods. v. Does 1-30*, 2:16-cv-00925 (D. Nev., 2016); *QOTD Film Inv. Ltd. v. Does 1-30*, 2:16-cv-00928 (D. Nev., 2016); *LHF Prod. v. Does 1-21*, 2:16-cv-01803 (D. Nev., 2016); *LHF Prod. v. Does 1-18*, 2:16-cv-01804 (D. Nev., 2016); *Cell Film Holdings v. Does 1-19*, 2:16-cv-01853 (D. Nev., 2016); *Crim Prods v. Does 1-22*, 2:16-cv-01968 (D. Nev., 2016); *Cell Film Holdings v. Does 1-20*, 2:16-cv-02089 (D. Nev., 2016); *ME2 Prods v. Does 1-25*, 2:16-cv-2657 (D. Nev., 2016).

[9] *UMG Recording, Inc. v. Doe*, 2008 WL 4104214, *4 (N.D. Cal. 2008) (numbers added); *see also Arista Records, LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6-7 (D.D.C. 2008), and the cases cited therein, noting the "overwhelming" number of cases where copyright infringement plaintiffs sought to identify "Doe" defendants and courts "routinely applied" the good cause standard to permit discovery. *See Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (Court may order expedited discovery for good cause.); *see also Sony Music Entertainment v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); see also *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011) (citation omitted).

[10] *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011); *See David v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ("Courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some opportunity for discovery to learn the identities."); *see also Nu Image, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 72420 (M. Dist. Fla. 2012); *accord Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009); *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000); *Green v. Doe*, 260 Fed.Appx. 717, 719 (5th Cir. 2007); *Brown v. Owens Corning Inv. Review Committee*, 622 F.3d 564, 572 (6th Cir. 2010); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Young v. Transportation Deputy Sheriff I*, 340 Fed Appx. 368 (9th Cir. 2009); *Krueger v. Doe*, 162 F.3d 1173, (10th Cir. 1998); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir.).

HAMRICK & EVANS LLP

nearly identical to the case at bar, this Court should grant the present motion for leave.

### A. Good Cause Exists to Grant the Present Motion

Here, all three of the factors establishing "good cause" for allowing expedited discovery prior to the 26(f) conference are met.

#### 1. Plaintiff has Identified Doe Defendants with Sufficient Specificity.

Exhibit "1" of the Plaintiff's Complaint on file herein sets out the specific date and time of each incident of copyright infringement, the infringer's IP Address, the infringer's Internet Service Provider ("ISP"), and the County and State in which the infringement occurred. As noted in the Complaint, the Plaintiff tracked all of the incidents of copyright infringement to IP Addresses operating within this forum state. Furthermore, as explained in the Declaration of Daniel Arheidt, attached hereto as Exhibit "1" and incorporated herein by reference, the information provided in the Complaint is sufficient to track each copyright infringement to a single Internet subscriber. As explained by Mr. Arheidt:

> In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber. [11]

The Plaintiff seeks to discover from the Defendants' ISPs the true name, address, telephone number, e-mail address and, wherever possible, Media Access Control ("MAC") address of each of the Defendants. This is all specific information that is in the possession of the Defendants' ISPs.

Obviously, without learning the Defendants' true identities, the Plaintiff is hopelessly unable to serve the Defendants with process and proceed with this case. The Plaintiff's important statutorily protected property rights are at issue in this

---

[11] See Declaration of Daniel Arheidt in Support of Plaintiff's Motion for Leave to Take Limited Expedited Discovery Prior to a Rule 26(f) Conference ("Arheidt Declaration") attached as Exhibit "1" and incorporated herein by reference, at p. 4, ¶ 22.

HAMRICK & EVANS LLP

5

lawsuit and, therefore, the equities should weigh heavily in favor of preserving the Plaintiff's rights. The Plaintiff has a strong legitimate interest in protecting its copyrights.  Meanwhile, the Defendants are all copyright infringers who have no legitimate expectation of privacy in the subscriber information they provided to the ISPs, much less in distributing the copyrighted works in question without permission.[12]  Meanwhile, the information sought by the Plaintiff is specifically limited to that information necessary for the Plaintiff to move forward with its case.[13]   Because the Plaintiff has identified the Doe Defendants with reasonable specificity, has narrowly tailored the scope of its intended to discovery, and the balance of the hardships falls squarely in favor of the Plaintiff, the Plaintiff has more than satisfied the first prong of the applicable "good cause" standard.

### 2. <u>Plaintiff has Made a Good Faith Effort to Identify the Doe Defendants and Demonstrated that there is No Feasible Means of Identification Other than Allowing Plaintiff to Take Early Discovery.</u>

There is no way to obtain the Defendants' true identities other than by getting the information from the Defendants' ISPs. As noted by Mr. Arheidt in the attached declaration, "[o]nly the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber."[14]  In the attached declaration, Mr. Arheidt recounts in detail the lengths Plaintiff's expert has gone in identifying the Defendants' IP addresses. Ex 1. at pp. 2-4.[15]  However, Mr. Arheidt makes it clear that neither the Plaintiff nor its expert can

---

[12] *See Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); and *Sony Music Entertainment, Inc. v. Does 1–40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission.").

[13] *See Sony*, 326 F. Supp., at 566.

[14] *Arheidt Declaration*, p. 4 ¶ 23.

[15] *Id* at pp. 2-4.

HAMRICK & EVANS LLP

reasonably obtain any further identifying information about the Defendants without the assistance of their ISP.[16]  Meanwhile, the ISP will only provide that assistance to the Plaintiff if required to do so under a duly authorized subpoena.

Logically, it is not possible for Plaintiffs to have a Rule 26(f) conference with the Defendants until the Plaintiff learns the Defendants' identities. Further, unless action is taken quickly, the ISPs' records may be deleted or destroyed,[17] and the Plaintiff's right to sue the Defendants for infringement may be forever lost. Because there is no other way for the Plaintiff to obtain the Defendants' identities except by serving a subpoena on Defendants' ISPs, coupled with the high risk that this information will be lost or destroyed in the absence of any court order allowing early discovery, the Plaintiff has amply satisfied the second factor in the foregoing "good cause" standard.[18]

### 3. Plaintiff Has Properly Established A *Prima Facie* Case for Copyright Infringement Against Each of the Defendants

The Plaintiff has satisfied the third good cause factor by properly pleading a cause of action for copyright infringement that is likely to survive any attempted motion to dismiss.  The Complaint alleges, in part, as follows:

> 47. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered work that are original.
> 48. The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display its Work.
> 49. As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to:
> (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;
> (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;
> (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

---

[16] *Id* at ¶¶23-24.

[17] *Id* at ¶ 21.

[18] *See e.g., Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *see also See* UMG, 2008 WL 4104214, *5.

HAMRICK & EVANS LLP

7

  (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

50. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).
51. By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also numerous owners of local theaters, their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.
52. The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants, including lost sales, price erosion, and a diminution of the value of its copyright.[19]

Further, the Plaintiff's allegations of infringement are attested to by the Plaintiff's investigator, Daniel Arheidt.[20] Meanwhile, Courts throughout this Country have consistently held that, where a copyright infringement is traced to a specific IP Address, as is the case here, the likelihood that the subscriber is the direct infringer provides a sufficient *prima facie* case to overcome a particular defendant's motion to dismiss.[21]

---

[19] Complaint at ¶¶ 47-52. *See* 17 U.S.C. §106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright.").

[20] *See Declaration of Daniel Arheidt in Support of Plaintiff's Motion for Leave to Take Limited Expedited Discovery Prior to a Rule 26(f) Conference* ("Arheidt Declaration") attached as Exhibit "1" and incorporated herein by reference.

[21] *See e.g., Malibu Media, LLC v. Does 1,* No. 12 Civ. 2078, 2013 WL 30648, at *4 (E.D.Pa. January 3, 2013); *John Wiley & Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 189 (S.D.N.Y.2012); *Malibu Media, LLC v. Pelizzo*, No. 12 Civ. 22768, 2012 WL 6680387, at *3 (S.D.Fla.2012) (finding a similar complaint sufficient where a plaintiff "simply alleged that a computer using the IP address assigned to Defendant participated in the alleged infringing activity" despite the fact that the Defendant argue[d] that the allegations [were] too speculative and conclusory to adequately allege a plausible copyright infringement claim against an individual person, specifically Defendant ... because they d[id] not explain how his condominium unit was associated with the IP address at issue"); *Braun v. Primary Distributor Doe No. 1*, Nos. C 12–5786 MEJ, 12–5814 MEJ, 12–5812 MEJ, 12–5813 MEJ, 2012 WL 6087179, at *3 (N.D.Cal. Dec. 6, 2012) (concluding that the plaintiff had adequately asserted a federal copyright infringement claim because the plaintiff alleged that "Defendants actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent filesharing protocol, including intentionally downloading a torrent file particular to Star Wars XXX. A Porn Parody, loading that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to Star Wars XXX. A Porn Parody, and ultimately, downloading and uploading pieces of a Star Wars XXX. A Porn Parody file to eventually obtain a whole copy of the file."); *Sunlust Pictures, LLC v. Does 1–75*, No. 12 Civ. 1546, 2012 WL 3717768, at *4 (N.D.Ill.2012) ("It is plausible, based on these allegations, that Doe shared copyrighted data with others in the swarm including some or all of the other defendants."); *see also Malibu Media v. Sanchez*, No. 13 Civ. 12168, pp. 4, 6 (E.D. Mich., Jan 15,

1  Therefore, the Plaintiff has satisfied its obligation to plead a *prima facie*
2  case.

### III.

### CONCLUSION

For the foregoing reasons, the Plaintiff requests that this Court grant leave to the Plaintiff to issue Rule 45 subpoenas to the Defendants' ISPs. A proposed order is tendered with this motion, attached hereto as Exhibit "**2**" and incorporated herein by reference.

Respectfully submitted, this March 28, 2017.

/s/ Charles Rainey
CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
*crainey@hamricklaw.com*
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
*Attorney for Plaintiff*

HAMRICK & EVANS LLP

---

2014) (Court denies Defendant Sanchez' motion to dismiss, noting "As the subscriber in control of the IP address being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer."); *Malibu Media v. Michael Harris*, No. 12 Civ. 1117-WTL-MJD (S.D. Ind., July 18, 2013); *Cobbler Nevada v. Hellman*, No. 15 Civ. 00909 (D. Or., Dec. 14, 2015) (Court rejects Defendant's argument that he should be dismissed as merely the subscriber of the Internet service where some infringement occurred, noting that, while it is possible that some other party used the defendant's IP Address to commit the infringing acts, it is equally plausible that the Defendant committed those acts himself). *Malibu Media v. John Doe*, No. 15 Civ. 3185 (D. Md., Sep. 12, 2016) (Court finds that Defendant's mere status as an internet service subscriber is sufficient to overcome a motion to dismiss); *Tcyk, LLC v. Doe*, No. 13 Civ. 3127 (C.D. Ill, Sep. 29, 2014).

9

EXHIBIT "1"

TO PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(F) CONFERENCE

**THE DECLARATION OF DANIEL ARHEIDT**

CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
crainey@hamricklaw.com
HAMRICK & EVANS LLP
7670 W. Lake Mead Blvd., Ste. 140
Las Vegas, Nevada 89128
+1.702.425.5100 (ph)
+1.818.763.2308 (fax)
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WWE STUDIOS FINANCE CORP., a Delaware corporation, | Case No.: 2:17-cv-893 |
| Plaintiff, | **DECLARATION OF DANIEL ARHEIDT IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE** |
| vs. | |
| JOHN AND JANE DOES, | |
| Defendants | |

1. My name is Daniel Arheidt. I am over the age of 18 and am otherwise competent to make this declaration. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate. Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

2. I am a consultant retained by the forensic investigation service, MAVERICKEYE UG, a German company, organized and existing under the laws of Federal Republic of Germany (the "Investigator").

3. The Investigator is in the business of providing forensic investigation services to copyright owners, such as the Plaintiff.

4. Plaintiff retained the services of the Investigator, and, in turn, retained my services in investigating and preparing the present lawsuit.

5. The Internet is a vast collection of interconnected computers and computer networks that communicate with each other. It allows users to exchange ideas and information freely and

1

easily, including academic research, literary works, financial data, music, audiovisual works, graphics, and an unending and ever-changing array of other data.

6. The Internet also affords opportunities for the wide-scale infringement of copyrighted motion pictures and other digital content.

7. Once a motion picture has been transformed into a digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in picture or sound quality.

8. To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called peer-to peer ("P2P") or BitTorrent networks. P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.

9. To use a P2P or BitTorrent distribution system requires more than a click of a button. A software installation and configuration process needs to take place.

10. The P2P systems enable widespread distribution of digital files. Each user of the system who copies a digital file from another user can then distribute the file to other users and so on, such that complete digital copies can be easily and quickly distributed, thereby eliminating long download times.

11. Additionally, the P2P methodologies for which the Investigator monitored for Plaintiff's Motion Picture make even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file using a P2P network. This is called "seeding." Other users ("peers") on the network connect to the seeder to download. As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from where the file can be downloaded. However, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together to comprise the whole.

HAMRICK & EVANS LLP

2

12. This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network can also be a source of download for that infringing file, potentially both copying and distributing the infringing Motion Picture. The distributed nature of P2P leads to rapid spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent.

13. The Investigator monitors P2P Systems for acts of distribution of Plaintiff's motion picture through the use of MaverikMonitor™ software.

14. When MaverikMonitor finds an IP address distributing Plaintiff's motion picture, a direct connection is made to that computer and a portion of the infringing file is downloaded. MaverikMonitor also records the exact time of the connection and other available information broadcast by the infringing computer.

15. This evidence is then saved on a secure server in indexed evidence logs.

16. To confirm the infringing activity, the data downloaded from each defendant is matched to the complete file and a full copy of the motion picture being distributed is compared with a DVD of the original motion picture confirming the infringing IP address is in fact distributing Plaintiff's motion picture.

17. The software uses a geolocation functionality to determine the location of each infringing IP address under investigation. The geolocation data for the infringing IP address is also set forth in Exhibit 1 of the Plaintiff's Complaint ("Complaint Exhibit 1"), incorporated herein by reference.

18. The software reviews and other publicly available and searchable data to identify the ISP responsible for each infringing IP address and such data is also set forth in Complaint Exhibit 1.

19. The forensic software routinely collects, identifies and records the Internet Protocol ("IP") addresses in use by those people who employ the BitTorrent protocol to share, copy, reproduce and distribute copyrighted works. In this way the software is connected to files of illegal versions of the Motion Picture.

HAMRICK & EVANS LLP

3

20. Although the Investigator and Plaintiff have successfully captured data showing the infringement occurring on the Internet, Plaintiff is only able to obtain the IP addresses of the individuals who are committing the infringement and does not yet know the actual identities of the individual defendants.

21. An IP address is a unique numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). It only enables Plaintiff to trace the infringer's access to the Internet to a particular ISP. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet. Each time a subscriber logs on, he or she may be assigned a different (or "dynamic") IP address unless the user obtains from his/her ISP a static IP address. ISPs are assigned certain blocks or ranges of IP addresses by the Internet Assigned Numbers Authority ("IANA") or a regional internet registry such as the American Registry for Internet Numbers ("ARIN"). However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. These intermediaries can be identified by the ISP and the intermediaries own logs will contain the subscriber information.

22. In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber.

23. Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used. However, once provided with the IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to

identify the name, address, email address, phone number and Media Access Control number of the subscriber.

24. Unfortunately, many ISPs only retain this information needed to correlate an IP address to a particular subscriber for a limited amount of time.

25. In this case, the Investigator determined that the Doe Defendants identified in Complaint Exhibit 1 were using the ISPs listed in the exhibit to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture.

26. It is possible for digital files to be mislabeled or corrupted; therefore, the Investigator (as agent for Plaintiff) does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the Motion Picture themselves.

27. As to Plaintiff's copyrighted Motion Picture, as identified in the Complaint, a member of the Investigator watches a DVD of the original Motion Picture.

28. After the Investigator identified the Doe Defendants and downloaded the motion pictures they were distributing, the Investigator opened the downloaded files, watched them and confirmed that they contained the Motion Picture identified in the Complaint.

29. To identify the IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted Motion, the Investigator's forensic software scans peer-to-peer networks for the presence of infringing transactions.

30. After reviewing the evidence logs, I isolated the transactions and the IP addresses of the users responsible for copying and distributing the Motion Picture.

31. Through each of the transactions, the computers using the IP addresses identified in Complaint Exhibit 1, transmitted a copy or a part of a copy of a digital media file of the copyrighted Motion Picture identified by the hash value set forth in Complaint Exhibit 1. The IP addresses, hash values, dates and times contained in Complaint Exhibit 1 correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in

HAMRICK & EVANS LLP

Complaint Exhibit 1 were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted Motion Picture.

32. Moreover, the users were sharing the exact same copy of the Motion Picture. Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum." The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1". By using a hash tag to identify different copies of the Motion Picture, the Investigator was able to confirm that these users reproduced the very same copy of the Motion Picture.

33. The Investigator's software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit 1 and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital motion picture.

34. The software uses a geolocation functionality to determine the location of the IP addresses under investigations. The location of each IP address is set forth in Complaint Exhibit 1 of the Complaint. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs.

35. I have reviewed the MaverikMonitor evidence logs, and can confirm the records of infringing activity in Complaint Exhibit 1, including IP address, time, and hash value, accurately reflect instances of actual observed distribution of Plaintiff's motion picture.

36. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___March 29___, 2017.

_____
Daniel Arheidt

HAMRICK & EVANS LLP